55 CCPA

### Application of Raymond F. LeBLANC, Boris Puscasu and John Nicita.
### Patent Appeal No. 7632.

United States Court of Customs
and Patent Appeals.
Nov. 10, 1966.

Sidney A. Ochs, George W. Talburtt, Detroit, Mich., for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the rejection of claims 22–28 in appellants' application serial No. 854,693, filed November 23, 1959, for "Windshield Wiper." No claim has been allowed.

The invention is a windshield wiper designed to minimize the tendency of wipers to lift away from the glass at high car speeds due to air flow. This purpose is effected by an airfoil transverse section of the yokes (wiper blade holders).[2] Each yoke which incorporates this feature is described as having a "frontal face * * * continuously arcuate and concave and [a] * * * rear face generally paralleling said frontal face" and an orientation vis-à-vis the wiper blade such that "tangents taken at successive points on said frontal face * * * make successively smaller acute angles with said axis" of the transverse section of the wiper body. Figure 6 shows a cross-section of a wiper blade and yoke of the invention.

Claim 22 is the main claim. The other claims are dependent thereon. Claim 22 reads (emphasis ours):

22. A wiper for use on an oscillatable wiper arm associated with the windshield of a vehicle and over which air flows upon forward movement of the vehicle, said wiper comprising a blade structure having an elongated flexible wiping body with a lengthwise extending wiping edge and an elongated flexible backing strip supporting said wiping body and having

1. Consisting of Examiners-in-Chief Manian and Dracopoulos, the latter writing the opinion, and Acting Examiner-in-Chief Angel.

2. Fig. 3 of the application is reproduced below. Secondary yokes 22 and 24 are mounted on opposite ends of primary yoke 20.

a transverse section substantially normal to the *axis of the transverse section of the wiping body,* and a pressure applying structure comprising a substantially rigid primary yoke having a portion adapted for attachment to said wiper arm and extending in the lengthwise direction of said backing strip and a pair of secondary yokes extending in the lengthwise direction of said backing strip and providing an operative connection between said primary yoke and said backing strip, one of said secondary yokes being connected intermediate its ends to the primary yoke at a position adjacent one end of said primary yoke and having its opposite ends connected to said backing strip at longitudinally spaced points on said backing strip, the other of said secondary yokes being connected intermediate its ends to the primary yoke at a position adjacent to the opposite end of said primary yoke from that to which said one secondary yoke is connected and said other secondary yoke having its opposite ends connected to said backing strip at longitudinally spaced points, said primary yoke being in spaced relation to said blade structure intermediate its positions of connection with said secondary yokes to define an opening therewith to accommodate a flow of air between said wiping body and said primary yoke, said primary yoke having a frontal face and a rearward face and having a leading edge and a trailing edge, said frontal face being that face which first encounters the said air flow during forward movement of the vehicle and said leading edge being that edge nearest to said wiping body, said frontal and rearward faces together defining a member having *an airfoil transverse section* substantially

throughout its length, said *frontal face being continuously arcuate and concave and said rear face generally paralleling said frontal face,* and said faces being so oriented relative to said wiping body such that said frontal *face sweeps upwardly from a point thereon adjacent the said axis* of said wiping body *to make an acute angle with said axis* and whereby tangents taken at successive points on said frontal face between said first mentioned point and said trailing edge make successively smaller acute angles with said axis, said primary yoke thereby *presenting its airfoil section at a favorable angle of attack to air deflected upwardly by said wiping body* in order to utilize the optimum airfoil characteristics of the airfoil section of said primary yoke to urge the wiper into contact with a windshield.

Claim 23 further recites an airfoil design for the secondary yokes similar to that of the primary yoke. Claim 24 differs from claim 22 in that the primary yoke extends beyond the points of connection with the secondary yokes. Claim 25 recites a primary yoke approximately the length of the wiping body. Claims 26 and 27 specify a lack of uniformity in the concavity of the frontal face of the primary yoke. Claim 28 is drawn to a wiper in which the areas of the frontal face of the primary yoke adjacent the ends are greater per unit length than the intermediate areas.

The examiner relied on the following references:

Péras et al.
(Peras)    3,037,233    June 5, 1962
Oishei      2,794,203    June 4, 1957

Peras teaches that the tendency of windshield wipers to lift away from the glass may be lessened by an airfoil design of the yokes. Figs. 5–8 of the patent are illustrative:

   

FIG. 5      FIG. 6      FIG. 7      FIG. 8

The tendency of the wiper to lift away is said to be a consequence of the reduced pressure above the wiper and increased pressure between the glass and wiper, the latter pressure further increased by the U-shape cross-section of the ordinary yoke and its orientation. The reference says this tendency may be overcome by forming the yoke with a "profile such that it causes an increase in pressure above and a reduced pressure beneath the wiper, so as to press the latter against the windscreen. The profile has preferably a convex face directed towards the wiper and a concave or flat face towards the front * * *." In one form of the invention it is disclosed that the yoke has a "negative incidence, that is to say it is inclined towards the windscreen in the direction of flow of the tangential stream of air." The effect is clearly that of an airfoil positioned in the air stream to obtain a desired pressure on the wiper blade.

Oishei also discloses a wiper intended to overcome the tendency to lift away from the windshield. In his specification he describes the invention thus:

According to the present invention, each wiper is provided with a wind reacting surface upon which the respective laterally flowing wind currents will impinge to urge the wiper downwardly toward the windshield for holding it more firmly in its operative contact with the windshield. Obviously then, the reacting surface area will be of sufficient expanse to counteract the objectionable lifting force with the surface area on the passenger side being oppositely inclined to the driver side of the vehicle. In the present disclosure, the reacting surface is carried by a fin or vane 13, preferably on the the back of the wiper and at the outer end portion thereof. The wind fin may be flared in an outward direction to increase the surface area toward the outer end for a greater effectiveness. It may be fixed at the optimum angle to cause the force of the wind currents to react most favorably in maintaining the wiping con-

tact, or it may be movably mounted to yieldably resist the air currents in producing an uniform downward urge.

Appellants submitted an affidavit evaluating performance tests in which appellants' wipers and those of Peras were compared with the "conventional" sort. The evaluation was summarized by the affiants as showing that wiper structures embodying the basic airfoil features of the invention provide:

(1) A substantial advance in performance over the conventional "crisp" wiper structure

(2) A substantial advance in performance over the Figures 5, 6, and 8 structures of Peras et al

(3) A substantial advance in performance over the Figure 7 structure of Peras et al unless modified for manufacturing and styling purposes in which event they are even then substantially equal in performance.

The examiner rejected claims 22 and 23 as obvious in view of Peras and claims 24–28 as obvious in view of Peras taken with Oishei. He dismissed the results of the tests as indicative of no more than a slight improvement over the structures of Peras and due to the use of the "cleaner airfoil design."

The board, relying on Peras, affirmed the examiner's rejection, observing:

The structural differences added in the dependent claims do not appear to be seriously argued by the appellants as leading [lending] patentability to their base claim 22 over the prior art.

The board concluded that the airfoil of appellants' claims was "at best, an obvious variant of the basic airfoil concept of the Peras et al. patent." It reasoned that the sections illustrated in Figs. 5–8 of the Peras specification did not exhaust those contemplated by the disclosure. The board pointed to the statement: "The profile has preferably a convex face directed towards the wiper and a concave or flat face towards the front" as a clear suggestion if not a direct teaching of the structure of the

appealed claims. It agreed with the examiner's analysis of the test results.

Appellants argue that Peras does not teach their distinctive combination of continuously arcuate, parallel surfaces and orientation vis-à-vis the wiper blade. They attack the statement which the board relied on as a clear suggestion of their invention as but a broad generalization:

> The terms "convex" and "concave" like "airfoil" connote many different shapes and since no part of the specific constructions in Peras et al. suggest a continuously arcuate convex face there is no more basis for saying that the quoted language includes Appellants' claimed continuously arcuate concave-convex form than it would be to say it included an undulated section. Moreover there is not the slightest suggestion of the important orientation feature in the appealed claims.

They also controvert the characterization of the test results as indicative of small differences and the determination of patentability on the basis of claim 22 alone.

The only question, then, is whether the structure and orientation of the claimed apparatus is obvious in view of Peras and Oishei.

We consider appellants' contention that the Peras disclosure contains "not the slightest suggestion of the important orientation feature" to be without merit. Peras refers to an arrangement of the frame (yoke) in one form of their invention so that it has a negative incidence, i. e., the frame "is inclined towards the windscreen in the direction of flow of the tangential stream of air." Appellants' claims demand an orientation of the yoke such that tangents taken between points on the frontal face between the vertical axis of the wiper and the trailing edge make successively

smaller acute angles with that axis.[3] As the solicitor points out, the claims are thus satisfied by *any tilting* of a yoke of appellants' design toward the wind. The yoke of Peras' Fig. 8, with its "negative incidence," is so tilted.

The principal issue thus resolves itself into whether the design of the yoke makes the claimed invention unobvious in view of Peras. The board felt that the reference in Peras to the preferred surfaces as concave or flat toward the front and convex toward the rear at least strongly suggested appellants' configuration. Appellants' objection is premised on their characterization of that teaching as insufficiently precise to suggest, without benefit of hindsight, any shape other than those of Peras' Figs. 5–8. We agree with appellants that "concave" in Peras' specification is used in a broad sense. We concede that the fact that it embraces the structures of Peras' Figs. 5–8 does not justify a conclusion that it includes *every* other shape. But we cannot agree that "concave" is used in such a way that no modification of (for example) Peras' Fig. 8 is suggested by it. It seems to us that, in the absence of a clearly indicated special meaning, one skilled in the art would quickly think of a frontal surface much like appellants' on reading that a "concave" surface was a preferred alternative in Peras' Fig. 8. "Convex," we note, also seems to be used in a broader than ordinary sense, but it clearly also embraces the configuration of appellants' rear face (see Peras' Fig. 8).

Appellants also rely on their test data to negate the board's contention of obviousness. Their brief, after quoting the board's dismissal of the test data as indicative of small differences inherent in appellants' changed profile, says:

> This conclusion is believed erroneous and contrary to the facts. It also fails to give any weight to test data

---

3. Apparently tangents taken between the *leading* edge and the point on the frontal face adjacent the vertical axis can form *any* angle with that axis and still be within the claims.

making it clear that the results obtained with at least three of the four constructions in Peras et al. are no better than those for the conventional "crisp" wiper, and that such would, if anything, direct one away from a construction such as Appellants['].

In general, the tests allegedly showed the wipers of Peras' Figs. 5, 6, and 8 to be unsatisfactory and the wiper of Peras' Fig. 7 to lose effectiveness at a speed about 20 mph less than that at which appellants' best wiper lost effectiveness.

We are not satisfied that the tests indicate a substantial superiority of the wipers of the claims over those of the reference. The solicitor argues, and we agree, that the tests are rendered inconclusive because there is no indication that the tests provided for any "negative incidence" for the wipers of the reference.

We therefore agree with the board that to construct the wipers of appellants' claims 22 and 23 would have been obvious to one skilled in the art from the Peras disclosure.

Appellants object to the board's resolution of all their claims on the basis of claims 22 and 23. Each of the further limitations of claims 24–28 seems to us a minor variation on the pertinent teaching of Peras. Adjustments in size and shape to secure a greater "vane" effect seem to us obvious, especially in view of Oishei. The latter reference teaches the extension of the vane area beyond the point of connection of the primary and secondary yokes and the utilization of more vane area near the outer end.

The decision of the board is affirmed.

Affirmed.

Judge SMITH took no part in the consideration or decision of this case.

Judge MARTIN participated in the hearing of this case but died before a decision was reached.